UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BRANDEN L. KING, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 12-CV-2256 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**OPINION**

This case is before the court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (#1). This court has reviewed Petitioner's Motion (#1), the Government's Response, (#6), Petitioner's Reply (#8), as well as the relevant briefs and transcripts from the underlying trial (09-CR-20040). Petitioner appears to assert that trial counsel provided ineffective assistance by failing to argue during trial that Petitioner was the victim of a conspiracy wherein Decatur police officers framed him by planting a shotgun in the back seat of his car. Because Petitioner does not provide persuasive evidence sufficient to surpass the high bar set by *Strickland*, Petitioner's Motion (#1) is DENIED.

**Background**

Before Petitioner was convicted in this case, he had three prior convictions for violent felonies: Burglary (Macon County Case #01-CF-1554), Armed Robbery (Macon County Case #02-CF-1467), and Conspiracy to commit Armed Robbery (Sangamon County Case #02-CF-

1080), thereby affording him a status enhancement as an Armed Career Criminal, pursuant to U.S.S.G. § 4B1.4(a) and U.S.S.G. § 4B1.4(b)(3)(B). (09-CR-20040 #35, Presentence Investigation Report ¶ 23) (hereinafter "PSR").

At the trial for the underlying offense in this case, Officer Sheets with the Decatur Police Department testified that on May 10, 2009, he was on patrol with Officer Tool. Sheets testified that he observed Petitioner operate a white 1990 Chevy without wearing a seatbelt and make a turn without using a turn signal. (PSR ¶ 4); (09-CR-20040 #49, Trial Transcript 34:6-8) (hereinafter "Tr."). Sheets then testified that, after initiating a traffic stop, he learned that the vehicle was registered to Petitioner and Petitioner's Illinois driver's license had been previously suspended. (Tr. 34:21-24). Due to this violation, Petitioner was ordered to exit the vehicle and was taken into custody. (Tr. 35:1-2). Petitioner was the only person in the car. (Tr. 35:3-4). Sheets testified that following standard police procedure, he then called for a tow truck. (Tr. 35:6-8). Next, also pursuant to standard procedure, Sheets told Tool to search the vehicle prior to it being towed, a routine process referred to as an inventory search. (Tr. 35:9-14; Tr. 40:13-18; Tr: 42:5-17). Tool testified that the inventory search of the vehicle revealed a Remington Model 870 20-gauge shotgun rolled up in a coat, lying on the back seat in plain view. (Tr. 43:7-44:23). During an interview, Petitioner told officers that: he did not know anything about the shotgun in the backseat, he had just bought the car, and it was probably the previous owner's gun. (PSR ¶ 7). Petitioner did not possess a valid Illinois Firearm Owner's Identification Card. (PSR ¶ 8).

On June 2, 2009, Petitioner was charged by indictment with being a felon in the possession of a firearm. (09-CR-20040 #1). A jury trial was held on March 8 and 9, 2010. (09-CR-20040 #25). In addition to testimony by the two officers that had stopped Petitioner, the government presented the testimony of: Sharon "Kay" Harvey, the previous owner of the

vehicle; Shamion McWilliams, an individual who had driven Petitioner to Rupert's Gun Shop to get the shotgun repaired; and Richard Vaughn, the owner of Rupert's Gun Shop. (Tr. 2).

Harvey, who had known Petitioner his entire life, testified that she sold the car to Petitioner in April of 2009 (less than a month prior to his arrest) and that, prior to selling the car, she removed everything from it. (Tr. 52). She specifically testified that she did not own a shotgun and had not left a shotgun in the car. (Tr. 53).

McWilliams testified that she had known Petitioner for about two to three years. (Tr. 54:22-23). She testified that on April 22, 2009, eighteen days prior to Petitioner's arrest, she had driven him to Rupert's Gun Shop to get his shotgun repaired. (Tr. 55-57). According to McWilliams, Petitioner carried the shotgun into the store in a black guitar case. (Tr. 57:18-22). Once the two entered the gun shop, Petitioner presented the shotgun to a repairman. (Tr. 58:4-6). When McWilliams was asked to describe the shotgun, she called it a "little bitty gun". (Tr. 58:17-19). However, when McWilliams was shown the shotgun that had been found in Petitioner's car, McWilliams stated that she was "100 percent sure" that the shotgun was the same shotgun she had seen previously in Petitioner's possession. (Tr. 58-61). McWilliams testified that prior to April 22, 2009, she had seen Petitioner with the shotgun one or two times at Petitioner's house. (Tr. 59).

The owner of Rupert's Gun Shop, Richard Vaughn, testified that in April or May of 2009, a black man accompanied by a black woman entered the store with a 20 gauge shotgun in a black case in need of repair. (Tr. 66-68). Vaughn did not identify Petitioner in open court. Vaughn testified that the shotgun had a shell jammed in the action. (Tr. 67-68). When presented with the gun found in Petitioner's car, Vaughn testified that he was "99.9 percent sure" that it was the same gun he repaired. (Tr. 68, 79-80). Vaughn noted that the gun in court was marred by

both facial rust and a large scratch, which he remembered were also present on the shotgun that he repaired. (Tr. 69). The jury deliberated for approximately 50 minutes between 2:25pm and 3:15pm, and returned with a verdict of guilty. (09-CR-20040 #25).

On July 8, 2010, Petitioner filed an appeal. (#40). On July 7, 2011, the Seventh Circuit affirmed this court's decision. (#54). On October 1, 2012, Petitioner filed the present Motion. (#1). On December 27, 2012, the Government filed its Response. (#6). On March 7, 2013, Petitioner filed a Reply, with accompanying affidavits. (#9).

**Analysis**

Petitioner argues that "the weapon was not his" and that "he had no knowledge of the weapon in his vehicle". (#1 p. 6). Petitioner collaterally attacks his conviction on a variety of grounds. First, he asserts that trial counsel provided ineffective assistance by failing to: 1) file a motion for an evidentiary hearing; 2) file a motion of disclosure; 3) file a motion of discovery; 4) file a motion to suppress evidence; 5) file a motion of illegal search; 6) file a motion to suppress witness statements; 7) identify and call defense witnesses; and 8) obtain physical evidence in his favor. Second, he asserts that trial counsel provided ineffective assistance by failing to investigate and argue that Petitioner's prior burglary conviction did not qualify for the Armed Career Criminal enhancement. (#1 p. 7). In support, Petitioner asserts that: the testimonies of Sheets and Tool conflicted with that of the Government's witness Shamion McWilliams; there were witnesses "with [him] seconds before he was pulled over" that would testify that no weapon was present in the back seat of his vehicle; surveillance video of the traffic stop would show that no weapon was present in the back seat of his vehicle and that he had engaged in no act affording a traffic stop; surveillance video of a gun shop which he was alleged to have visited

would show that he had never been there on the date in question; and that his mother would have testified that he "could not fit the coat" in which the shotgun had been wrapped and that he would have never worn that coat, because the coat had fur, and he considered fur to be too feminine.

To succeed on a claim for ineffective assistance of counsel, Petitioner must show both that his attorney's performance was objectively deficient by falling outside the wide range of competent representation and that he was prejudiced by the incompetent representation. *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984)). "[A] constitutionally deficient performance is one that falls below an objective standard of reasonableness under prevailing professional norms." *Shell v. United States*, 448 F.3d 951, 954 (7th Cir. 2006). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [a court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011) (citing *Strickland*, 466 U.S. at 689).

Second, to establish prejudice, the petitioner must show that there is a reasonable probability that, but for his counsel's mistakes, the result of the trial would have been different. *Strickland*, 466 U.S. at 694. "The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir.2011). If a strategic reason for a decision was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel. *Li*, 648 F.3d at 528 (citing *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir.2005) and *United States v. Lathrop*, 634 F.3d 931, 937–38 (7th Cir. 2011) (noting that, provided

counsel's reasons for his decision were not "so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel, his performance will not qualify as deficient.")). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland v. Washington*, 466 U.S. 668, 670 (1984).

**Claim 1: Failure to make pretrial motions**

"When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005).

  *A. Motion for evidentiary hearing*

Petitioner argues that he was prejudiced when trial counsel did not move for an evidentiary hearing "to see all of the evidence [brought] against him" because "he was not afforded the chance to research and prepare a proper and accurate defense." (#7 p. 2). The Government responds that Petitioner did not identify the purpose for an evidentiary hearing or its necessity."[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). However, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). This court agrees with the Government. Because Petitioner fails to indicate what, if anything, the Government failed to disclose, he does not provide any allegation of evidence that could have

changed the result of the trial. This claim is without merit.

### B. Motion of disclosure

Similar to Petitioner's argument on the motion for evidentiary hearing, Petitioner argues that trial counsel should have required the Government disclose "how all of the [G]overnment's witnesses came into the picture but also where the weapon came from and the motives someone may have had to frame [Petitioner]." (#8 p. 3). Petitioner puts the cart before the horse regarding which party bears the burden of proof. In an ineffective assistance of counsel claim, a defendant bears the burden of proof and persuasion. *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005). During trial, the Government set an adequate foundation for the five relevant witnesses (Sheets and Tool, Harvey, McWilliams, and Vaughn). Further, at trial, Sheets and Tool testified that they found the shotgun in the back seat of the car that Petitioner both owned and was driving. It is Petitioner's burden to put forward at least some evidence that the shotgun was planted or that the witnesses were not telling the truth. While the Government is compelled to disclose evidence favorable to the accused, Petitioner cannot demand that it provide evidence that does not exist. "It is not ineffective assistance for counsel to not file a meritless motion." *United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990). This claim is also without merit.

### C. Motion of discovery

As in his prior arguments, Petitioner fails to indicate in either of his filings what he thinks should have been disclosed during discovery. Petitioner argues only that he had "the absolute right to have his complete discovery… to help formulate his defense." (#8, p. 2). As before, this claim is without merit.

*D. Motion to suppress evidence and motion for illegal search*

Petitioner argues that trial counsel should have filed a motion to suppress the shotgun, because there was no probable cause for the search, and thus, under exclusionary rule, that evidence must be precluded from trial as the fruit of an illegal search. Petitioner argues that "[t]here was no observation of any criminal activity or reasonable suspicion to believe a search of [Petitioner's] vehicle would of [sic] revealed a firearm." (#8 p. 1). Petitioner misunderstands the law.

"[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). The failure to wear a seatbelt is a traffic violation. 625 ILCS 5/12-603.1. Petitioner does not dispute that he was not wearing a seatbelt; thus, the initial stop was valid. Driving while one's license is suspended is a Class A misdemeanor. 625 ILCS 5/6-303. Petitioner does not dispute that he was driving while his license was suspended. Because Petitioner was driving on a suspended license, he was not authorized to drive that vehicle, thus permitting the officers to impound and tow the vehicle. *United States v. Moreland*, 703 F.3d 976, 988 (7th Cir. 2012). After impounding the car, officers are permitted to conduct "a routine, unexceptionable inventory search" that revealed the weapon in the back seat. *Id*. Such an inventory search may be warrantless provided that it is performed in accordance with local police procedure and is not merely as a pretext for an investigation. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *United States v. Velarde*, 903 F.2d 1163, 1166 (7th Cir. 1990). "[W]arrantless inventory searches of impounded vehicles by authorities pursuant to a standard police policy or procedure do not violate the Fourth Amendment." *United States v. Jackson*, 189 F.3d 502, 508 (7th Cir. 1999),

*citing S. Dakota v. Opperman*, 428 U.S. 364, 369 (1976). "A warrantless inventory search is constitutionally permissible if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search satisfies the fourth amendment standard of reasonableness, *i.e.*, it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *Velarde*, 903 F.2d at 1165 (internal citations omitted). Petitioner does not contest that he was lawfully arrested for driving on a suspended license, and he does not dispute the testimony by Sheets and Tool that the inventory search was conducted in accordance with an established policy of inventory procedure.

Petitioner does argue that the search was pretextual because the officers allegedly did not take an inventory of the contents of the vehicle. However, Petitioner neither provides any evidence for his assertion that an inventory sheet did not exist, nor does he aver that the standard policy for an inventory search requires that the inventory be recorded on a sheet. Nor does he assert that he had previously asked for the inventory sheet and that it was not turned over pursuant to the Government's *Brady* duties. Thus, Petitioner cannot dispute that the inventory search was proper. Accordingly, a motion to suppress would not have been successful. As with the other claims, this one is also without merit.

### E. Failure to call defense witnesses

In his Reply, Petitioner attaches an affidavit describing the testimony that Schewonda Jackson, Brandon Jackson, and Giovanni Jones would have given, had trial counsel subpoenaed them. Schewonda Jackson is Petitioner's mother. (#33). Petitioner avers that she would have testified that "the coat the weapon was wrapped in was not [Petitioner's], the coat was not [Petitioner's] size and that she had never seen [Petitioner] with the weapon in question." (#9 p.

1). Had a jury heard this evidence, there is a strong probability that they would have considered the possibility that the coat in which the shotgun was wrapped was not necessarily one that was either owned or worn by Petitioner. Even assuming Petitioner's affidavit to be true, declining to call a defendant's mother to testify is hardly a strategic decision that would fall outside the wide range of competent representation. It is not inconceivable that a jury would consider the testimony of the defendant's mother to be of low probative value. Even if it did gauge that that testimony was credible, the testimony from the Government's other witnesses is of such high probative value that there is no reasonable probability that, had Schewonda Jackson been called, the result of the trial would have been different.

Petitioner further avers that Brandon and Mr. Jones would have testified that the weapon was not in the back seat of his vehicle "just seconds before he was pulled over" by Sheets and Tool. (#9 p. 1-2). Petitioner does not indicate who Brandon Jackson and Giovanni Jones are and sets no foundation for their personal knowledge of the testimony that Petitioner purports they would have given. Regardless, this testimony is hardly of such persuasive import that there is no reasonable probability that had they been called, the result would have been different.

### F. Failure to obtain physical evidence

Petitioner also argues that trial counsel provided ineffective assistance by failing to acquire five pieces of physical evidence: surveillance video from the traffic stop; surveillance video from Rupert's Sport Shop; dispatch recordings regarding Petitioner's arrest; the Government's determination of the "interstate nexus" for the weapon; and the coat in which the shotgun was wrapped.

Regarding the alleged surveillance video from the traffic stop, Petitioner argues that the

officers made false statements when they specified what streets Petitioner had allegedly driven down because the route they described would not only be contradicted by the tape, but also were impossible. However, the officers did not testify at trial as to the specific route that they took while following Petitioner, so such video evidence, even for impeachment purposes, would have been irrelevant at trial. Petitioner also argues that the surveillance video from the traffic stop would have corroborated his assertion that he had been wearing a seatbelt, and that he had made a turn signal before turning, so the traffic stop was pretextual. This argument cannot succeed. Petitioner would need to prove up these allegations at an evidentiary hearing. In order to secure an evidentiary hearing, "a sworn affidavit with specific details that showed [Petitioner] had actual proof of the conduct alleged [is] required." *Galbraith v. United States*, 313 F.3d 1001, 1010 (7th Cir. 2002). While Petitioner does provide an affidavit, he states the following:

> This video footage would show that I never broke any traffic laws and that a weapon was never found in the backseat (behind the driver[]s seat; the vehicle was a 1990 Chevy Caprice Classic Station Wagon with a third row seat and a fifth door that would be considered the trunk area) of my vehicle as officers Sheets and Tool claimed. This footage would also show that officers tool and Sheets did not recover the weapon that they said were in the backseat of my vehicle, that niether [sic] officer performed the search of my vehicle and that other officers performed the search of my vehicle.

(#9 ¶ 3). Although this court is required to "grant an evidentiary hearing if a § 2255 petitioner alleges facts that, if proven would entitle him to relief, the threshold determination that the petitioner has sufficiently alleged such facts requires the petitioner to submit a sworn affidavit showing what specific facts support the petitioner's assertions." *Galbraith*, 313 F.3d at 1009. Although Petitioner has indeed submitted a sworn affidavit, he has provided no facts beyond mere speculation and his personal knowledge. "It is well-established in this circuit that the district court need not hold a hearing on § 2255 petitions in every case where the petitioner

makes factual allegations… Mere unsupported allegations cannot sustain a petitioner's request for a hearing." *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989). Petitioner's claims regarding the surveillance video from the traffic stop are too speculative to warrant an evidentiary hearing.

Regarding the alleged surveillance video from Rupert's Sport Shop, Petitioner asserts that the footage would show that he never went into the store. As discussed above, Petitioner must make some factual assertion beyond mere speculation regarding those facts in order to secure an evidentiary hearing. Petitioner has not even established the existence of a surveillance camera covering that location, much less the survival of any footage from the period in question.

Regarding the dispatch recordings, Petitioner argues that the dispatch tapes would corroborate his assertion that the officers only determined that his license had been suspended at the time of his arrest, rather than when they checked his license plates. Again, Petitioner only provides bare speculation.

Regarding the "interstate nexus findings", Petitioner argues that that information would "shin[e] some light on how the weapon may have ended up in the trunk part[1] of [Petitioner's] car wrapped in a coat with fur on it. The findings might reveal who was framing [Petitioner]." (#8 p. 6). This argument is creative, but frivolous. The Presentence Investigation Report indicates that the weapon was manufactured in the State of New York. (PSR ¶ 9). Petitioner was arrested in possession of the weapon in Illinois. That is sufficient to qualify as having been "in or affecting

---

[1] So in original. Notably, Petitioner's text regarding his placement of the shotgun in the *trunk* not only contradicts the testimony from Sheets and Tool, but also contradicts Petitioner's other statements regarding the purported non-existence of the shotgun. *See, e.g.*, #9 p. 1 ("Mr. Jackson and Mr. Jones would have testified to there not being a weapon in the back seat of my vehicle…"); #9 p. 2 ("This video footage would show that I never broke any traffic laws and that a weapon was never found in the backseat (behind the driver[']s seat).")

interstate commerce." 18 U.S.C. § 922(g)(1); *United States v. Sarraj*, 665 F.3d 916, 921 (7th Cir. 2012) ("[T]he required interstate nexus under section 922(g)(1) can be established merely by evidence that the gun was manufactured outside the state in which it was possessed, from which we infer that the gun must have traveled in interstate commerce at least once.") (internal quotations marks omitted).

Regarding the coat, Petitioner appears to be relying on a trial strategy of "if the coat doesn't fit, you must acquit". He argues that the "jury should have been made aware of the coat[']s existence as well as presented the coat so that they could make the determination if [Petitioner] could have fit the coat or if it was even his size." (#8 p. 6). As discussed above, mere possession of a coat does not necessarily mean that the possessor wore, much less owned, that coat.

None of Petitioner's allegations is so persuasive that, even taken together, trial counsel's failure to present them to a jury is objectively deficient, nor is there a reasonable probability that, but for the failure to present them, the result of the trial would have been different. Claim 1 in its entirety cannot prevail.

**Claim 2: Failure to investigate state burglary conviction**

Petitioner also asserts that trial counsel failed to argue that Petitioner's prior burglary conviction (Macon County Case #01-CF-1554) should not have constituted one of the qualifying offenses for the purpose of the Armed Career Criminal enhancement, because the crime to which he pled guilty was neither a violent felony nor a crime of violence on the facts. Petitioner indicates that he walked into a grocery store during open hours and attempted to shoplift. (#1 p. 7). Petitioner admits that he was previously convicted of a violation of 720 ILCS 5/19-1, but

argues that he neither trespassed in the store without authorization nor did he enter the store with intent to commit a crime. (#1 p. 8). Petitioner argues that trial counsel was ineffective for failing to further contest this issue.

However, in the Presentence Investigation Report, trial counsel did note, even if obliquely, an objection to the Presentence Report. (#35 p. 17). That comment stated as follows:

> [T]he defendant's attorney did advise that while the defendant is currently an Armed Career Criminal (ACC) pursuant to statute and current case law, they disagree that the Burglary conviction (#01-CF-1554) should qualify as a triggering ACC offense. They believe that the underlying facts clearly state that the defendant's offense was a shoplifting offense, but because he was convicted of Burglary, this offense is a triggering conviction for the ACC provision. It is their opinion that Congress could not have intended for conduct involving only shoplifting to be a triggering ACC offense. Nonetheless, defense indicated that they understand "Burglary" is clearly deemed a triggering ACC offense, therefore, they have no objections.

(#35 p. 17).

Further, Petitioner challenged the same issue on appeal. On appeal, the Seventh Circuit held that "the Supreme Court has interpreted burglary under the ACCA to be considered a violent felony only if it is 'generic burglary,' that is, burglary committed in a building or enclosed space." *United States v. King*, 643 F.3d 1003, 1005 (7th Cir. 2011), *citing Shepard v. United States,* 544 U.S. 13, 16–17 (2005), *citing Taylor v. United States,* 495 U.S. 575, 599 (1990). The Seventh Circuit continued:

> An assessment of the divisibility of the Illinois burglary statute has no effect on King's career offender status because the record makes clear that King's particular conviction at issue—burglary by entering a Cub Foods building— was a generic burglary offense that on its face fell within the ACCA's definition of a violent felony. King pleaded guilty to burglary; thus, he admitted the intent to commit a crime within a building or enclosed space. Because burglary is a violent felony for purposes of the ACCA if committed in a building or enclosed space, the district court did not err in using King's prior burglary conviction as a qualifying conviction under the ACCA.

*King*, 643 F.3d at 1005. Although the doctrine of the law of the case is not directly applicable because the case is not on remand, the challenge that Petitioner raises here is effectively the same as the one previously raised on direct appeal. Thus, issue preclusion requires this court to adhere to the Seventh Circuit's previous decision. Because trial counsel is not required to make a meritless argument, this claim also cannot succeed.

  Because none of Petitioner's claims demonstrate that his attorney's performance was objectively deficient by falling outside the wide range of competent representation and that he was prejudiced by the incompetent representation, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case. For a certificate of appealability to be issued, Petitioner must show that jurists of reason would find it debatable whether his motion states a valid claim of the denial of a constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009). This court concludes that jurists of reason would not find it debatable whether Petitioner's Motion states a valid claim of the denial of a constitutional right and also concludes that jurists of reason would not find it debatable that this court correctly found that his trial counsel's representation was not ineffective.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's pro se Motion to Vacate, Set Aside or Correct Sentence (#1) is DENIED.

(2) A certificate of appealability is DENIED.

(3) This case is terminated.

ENTERED this 1st day of July, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE